**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | | |
|---|---|---|
| **DERRICK SCOTT** | : | **CIVIL ACTION NO.: 05-2024-P** |
| **VERSUS** | : | **JUDGE: WALTER** |
| **ROBERT DAVIS, ET AL** | : | **MAGISTRATE JUDGE: HORNSBY** |

**AFFIDAVIT**

**PARISH OF CLAIBORNE**

**STATE OF LOUISIANA**

I, **KEVIN KIDD**, the undersigned affiant, having first been duly sworn, did depose and state under oath the following:

1. That I am employed by the Louisiana Department of Public Safety and Corrections as a Correctional Officer (Sergeant) at the David Wade Correctional Center at Homer, Louisiana (DWCC), and was so employed during July 2005. I have been employed as a Correctional Officer at DWCC for approximately ___ years.

2. At the request of the Attorney General's Office I have reviewed the claims asserted against me in the lawsuit of Derrick Scott, DOC #126372.

3. In his lawsuit, inmate Derrick Scott makes claims of cruel and unusual punishment asserted against him at DWCC on July 10, 2005.

4. As a Correctional Officer (Sergeant) at DWCC during July 2005, I was familiar with DWCC's Use of Force Policy governed under the Department's Employee Policy Memorandum #02-01-005 during July 2005, a copy of which is attached. To affiant's knowledge, the purpose of this program is to provide guidance

EXHIBIT
4
Blumberg No. 5118

regarding the use of force. This includes physical force, chemical agents, firearms, electronic capture shield and other similar devices, intermediate/impact weapons, restraints, less than lethal munitions and other tactical equipment as authorized.

5. According to the Department's Employee Policy Memorandum #02-01-005, Force, Necessary Force, Reasonable Force, and Excessive Force are defined as followed:

(b) Force - Bodily contact of some nature—either with or without the use of restraint, electrical device, chemical agent, less than-lethal munition and device or firearm—which causes someone either to act in a manner contrary to his intent or to change his behavior to the desired action;

(c) Necessary Force – Force needed to gain control of an individual;

(d) Reasonable Force – Force justified by the specific elements of a situation, such as the amount of force responded to, a person's perception of danger, the existence of non-forceful alternatives, and any other relevant factors;

(e) Excessive Force – Force used in a situation justifying force that exceeds the force necessary to control the situation or continues after the person is subdued or restrained.

(See Attachment 1, pp. 1-2, sec. 2(B)(C)(D) and (E).

6. In accordance with Employee Policy Memorandum #02-01-005, physical force may be used to defend one's self or others against any physical assault. (See Attachment 1, p. 5, sec. D(2)(b).

7. Derrick Scott, DOC #126372, was an inmate housed in extended lockdown at DWCC during July 2005.

8. On July 10, 2005, the use Necessary Force on inmate Derrick Scott was required in connection with the following incident:

- On July 10, 2005, affiant was running the panel box to Tier C of the N4 Housing Unit. From the panel box, affiant opened cell #2 housing inmate Derrick Scott so that he could be escorted to the shower area for a shower. After inmate Scott was removed from his cell, affiant clearly saw inmate Scott push DWCC Correctional Officer (Sergeant) Robert Davis while being escorted to the shower area. Correctional Officers, Sergeant Davis and (Lieutenant) Roderick Malcolm, immediately took inmate Scott to the floor. Affiant immediately closed the panel box and went to assist in restraining inmate Scott. Affiant clearly saw inmate Scott attempting to strike, spit, kick and bite the officers. Other DWCC Correctional Officers, Lieutenant Sanders, and Lieutenant Evans responded to provide assistance. Affiant gave inmate Scott several direct verbal orders to stop fighting. Inmate Scott refused to comply. As a result, affiant and Lieutenant Malcolm held inmate Scott's head back and to the side in an attempt to prevent his spitting and biting them. Lieutenant Evans and Lieutenant Sanders held inmate Scott's legs in an attempt to prevent him from kicking. Sergeant Davis held inmate Scott's arms in an attempt to prevent him from striking.

- Correctional Officer (Captain) John Toffton was also radioed to provide assistance. Upon his arrival, Captain Toffton gave inmate Scott several direct verbal orders to stop fighting. Inmate Scott refused to comply. As a result, inmate Scott was placed back in his cell and physically restrained until he stopped fighting. Scott's cell door was then closed.
- Inmate Scott later complied with the previous orders to stop fighting. However, DWCC Correctional Officer (Lieutenant Colonel) Danny Mills authorized placing inmate Scott in a restraint chair for security purposes to protect staff. DWCC Medical Personnel was notified. Inmate Scott was later examined and treated by DWCC medical personnel, Nurse Grace Lee.
- Captain Toffton ordered that the video camera be set up. Inmate Scott was placed in the restraint chair. Captain Toffton took pictures of inmate Scott's injuries. Unusual Occurrence Reports (UOR) were also drafted in connection with the incident. A copy of affiant's UOR is attached hereto.

9. I have reviewed the claims in the lawsuit of inmate Derrick Scott. Inmate Scott claims that on July 10, 2005, I intentionally used excessive force against him. I, however, assert the following:

(a) On July 10, 2005, Necessary Force was used on inmate Derrick Scott in an attempt to restore discipline following his physical assault on DWCC Correctional Officers, and his refusal to comply with several direct verbal orders to stop fighting;

(b) On July 10, 2005, Necessary Force was used on inmate Derrick Scott, only after he physically assaulted DWCC Correctional Officers and refused to comply with several direct verbal orders to stop fighting;

(c) On July 10, 2005, affiant used only the amount of physical force necessary to restore discipline following inmate Scott's physical assault on DWCC Correctional Officers, and refusal to comply with several direct verbal orders to stop fighting;

(d) Inmate Scott's conduct on July 10, 2005 created a situation which could have resulted in serious physical injury if affiant, and other DWCC Correctional Officers, had not brought the inmate under control;

(e) The incident involving inmate Scott on July 10, 2005, could have been prevented if inmate Scott had not physically assaulted DWCC Correctional Officers;

(f) Any injuries sustained by inmate Scott during the incident that occurred on July 10, 2005 could have been prevented if inmate Scott had complied with direct verbal orders to stop fighting Correctional Officers;

(g) At no time on July 10, 2005 did affiant initiate the use of Necessary Force against the person of inmate Derrick Scott without just cause;

(h) At no time on July 10, 2005 did affiant intentionally or willfully use excessive force against the person of inmate Derrick Scott;

(i) At no time on July 10, 2005 did affiant intentionally or willfully deny inmate Derrick Scott medical treatment.

The above facts are true and correct to the best of my knowledge, information and belief.

**WITNESSES:**

_____________________________ | _____________________________
SIGNATURE | **KEVIN KIDD**

_____________________________
PRINT

_____________________________
SIGNATURE

_____________________________
PRINT

**SWORN TO AND SUBSCRIBED** before me this _____ day of March, 2007, _______________, Louisiana.

_____________________________
**NOTARY PUBLIC**

Form: DWCC 56

DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS
**DAVID WADE CORRECTIONAL CENTER**

VENETIA MICHAEL, WARDEN

RICHARD STALDER, SECRETARY

# UNUSUAL OCCURRENCE REPORT

| Name | DERRICK SCOTT | Number | 126372 | Housing | N4C | Date of Incident | 10JULY05 | Time | 1:30 |
|---|---|---|---|---|---|---|---|---|---|
| Location of Incident | N4C | | | | | Witnesses | LT. MALCOLM SGT. DAVIS LT. SANDERS LT. EVANS CAPT. TOFFTON NURSE LEE | | |
| Type of Incident | Assault on Staff | | | | | | | | |

DESCRIPTION OF THE INCIDENT (ATTACH ADDITIONAL INFORMATION IF NEEDED)

ON THE ABOVE DATE AND TIME I, C/SGT. KIDD WAS RUNNING THE C-TIER PANEL BOX WHILE OPENING CELL #2 WHICH HOUSES INMATE DERRICK SCOTT #126372 FOR HIS SHOWER I, SGT. KIDD CLEARLY SAW INMATE SCOTT PUSHED SGT. DAVIS AS HE WAS BEING ESCORTED TO THE SHOWER. LT. MALCOLM AND SGT. DAVIS IMMEDIATLEY TOOK INMATE SCOTT TO THE FLOOR. I, SGT. KIDD IMMEDIATLEY CLOSED THE PANEL BOX AND ASSISITED RESTRAINING INMATE SCOTT. INMATE SCOTT CONTINUED TO FIGHT BY BITING, KICKING, HITTING AND SPITTING. WHILE I SGT. KIDD GAVE ORDERS TO STOP FIGHTING. INMATE SCOTT FLATLEY REFUSED. LT. MALCOLM NOTIFIED THE CAPTAIN ON THE RADIO TO 10 -19 N4. LT. SANDERS, LT. EVANS, AND CAPT. TOFFTON ARRIVED. INMATE SCOTT WAS PLACED BACK IN HIS CELL AND WAS PHYSICALLY RESTRAINED UNTIL HE COMPLIED TO ALL ORDERS. I THEN CLOSED THE CELL DOOR.NURSE LEE WAS NOTIFIED AND EXAMINED INMATE SCOTT. HE WAS LATER PLACED IN THE RESTRAINT CHAIR PER SECURITY REASONS.

KEVIN KIDD SGT.
[signature]
**REPORTING OFFICER**

7/10/2005
**DATE COMPLETED**

XC: WARDEN (ORIGINAL)
DEPUTY WARDEN
CHIEF OF SECURITY
UNIT MAJOR
DEPARTMENT HEAD

06:40
**TIME**

[signature]
**REVIEWED BY**

2

DWCC Form #56 (EMP #01-01-009) (Revised 3/02)

DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS
DAVID WADE CORRECTIONAL CENTER

# UNUSUAL OCCURRENCE REPORT

VENETIA T. MICHAEL, WARDEN

RICHARD L. STALDER, SECRETARY

| NAME | NUMBER | DORM | DATE OF INCIDENT | TIME |
|---|---|---|---|---|
| Derrick Scott | 126372 | N4 | 10 July 05 | 1:30 |

| LOCATION OF | WITNESSES |
|---|---|
| N4C | Lt. Malcolm, Sgt Davis, Lt. Sanders, Lt. Evans, Capt Tofton, Nurse Lee |

TYPE OF INCIDENT (CHECK ONE)

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| ✓ | ASSAULT ON STAFF | | MAJOR | | ROOF SHAKEDOWN | | PROTECTION | | MAINTENANCE |
| | AGG. SEX OFFENSE | | SEX OFFENSE | | SHIFT SHAKEDOWN | | VIOLENT DEATH | | REPAIR REQUEST |
| | AGG. FIGHT | | USE OF FORCE | | FRONT GATE | | DEATH DUE TO | | FENCE CHECK |
| | FIGHT | | MINOR | | MATTRESS | | MENTAL HEALTH | | WEEKLY INSPECTION |
| | ESCAPE | | SEARCH OF INMATE | | GROUNDS | | MEDICAL | | MONTHLY INSPECTION |
| | CONTRABAND | ✓ | OTHER Addendum | | | | | | |

☐ CHEMICAL AGENTS USED ☐ MECHANICAL RESTRAINTS USED

DESCRIPTION OF THE INCIDENT (ATTACH ADDITIONAL INFORMATION IF NEEDED)

On the above date and time I, Sgt Kidd was running the C-Tier Panel box while opening cell #2 which House inmate Derrick Scott #126372 for his shower. I Sgt Kidd clearly saw inmate Scott pushed Sgt Davis as he was being escorted to the shower Lt. Malcolm and Sgt Davis immediately took inmate Scott to the floor I Sgt Kidd immediately closed the Panel box and assisted restraining inmate Scott. Inmate Scott continued to fight by biting, kicking and spitting. I Sgt Kidd along with Lt. Malcolm pushed his head back to prevent him from biting Lt. Malcolm and myself and to the side to prevent him from spitting on us, I Sgt Kidd gave orders to stop fighting. Inmate Scott finally reduced Lt. Malcolm notified the captain on the Radio to 10-19 N4. Lt. Sanders, Lt Evans, and Capt Tofton arrived. Inmate Scott was placed back in his cell and was physically restrained until he complied to all orders. I then closed the cell door. Nurse Lee was notified and examined inmate Scott. He was later placed in the restraint chair per security Reason.

Information not included in previous reports.

[signature] Kevin Kidd
Reporting Officer

7/16/05
Date Completed

~~06:40~~ 3:30 A.M.
Time

XC: WARDEN (ORIGINAL)
DEPUTY WARDEN
ASST. WARDENS
LT. COLONELS
UNIT MAJORS
DEPARTMENT HEADS

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | | |
|---|---|---|
| **DERRICK SCOTT** | : | **CIVIL ACTION NO.: 05-2024-P** |
| **VERSUS** | : | **JUDGE: WALTER** |
| **ROBERT DAVIS, ET AL** | : | **MAGISTRATE JUDGE: HORNSBY** |

**AFFIDAVIT**

**PARISH OF CLAIBORNE**

**STATE OF LOUISIANA**

I, **CHRIS EVANS**, the undersigned affiant, having first been duly sworn, did depose and state under oath the following:

1. That I am employed by the Louisiana Department of Public Safety and Corrections as a Correctional Officer (Lieutenant) at the David Wade Correctional Center at Homer, Louisiana (DWCC), and was so employed during July 2005. I have been employed as a Correctional Officer at DWCC for approximately ____ years.

2. At the request of the Attorney General's Office I have reviewed the claims asserted against me in the lawsuit of Derrick Scott, DOC #126372.

3. In his lawsuit, inmate Derrick Scott makes claims of cruel and unusual punishment asserted against him at DWCC on July 10, 2005.

4. As a Correctional Officer (Lieutenant) at DWCC during July 2005, I was familiar with DWCC's Use of Force Policy governed under the Department's Employee Policy Memorandum #02-01-005 during July 2005, a copy of which is attached. To affiant's knowledge, the purpose of this program is to provide guidance

Blumberg No. 5118 EXHIBIT 5

regarding the use of force. This includes physical force, chemical agents, firearms, electronic capture shield and other similar devices, intermediate/impact weapons, restraints, less than lethal munitions and other tactical equipment as authorized.

5. According to the Department's Employee Policy Memorandum #02-01-005, Force, Necessary Force, Reasonable Force, and Excessive Force are defined as followed:

(b) Force - Bodily contact of some nature—either with or without the use of restraint, electrical device, chemical agent, less than-lethal munition and device or firearm—which causes someone either to act in a manner contrary to his intent or to change his behavior to the desired action;

(c) Necessary Force – Force needed to gain control of an individual;

(d) Reasonable Force – Force justified by the specific elements of a situation, such as the amount of force responded to, a person's perception of danger, the existence of non-forceful alternatives, and any other relevant factors;

(e) Excessive Force – Force used in a situation justifying force that exceeds the force necessary to control the situation or continues after the person is subdued or restrained.

(See Attachment 1, pp. 1-2, sec. 2(B)(C)(D) and (E).

6. In accordance with Employee Policy Memorandum #02-01-005, physical force may be used to defend one's self or others against any physical assault. (See Attachment 1, p. 5, sec. D(2)(b).

7. Derrick Scott, DOC #126372, was an inmate housed in extended lockdown at DWCC during July 2005.

8. On July 10, 2005, the use Necessary Force on inmate Derrick Scott was required in connection with the following incident:

- On July 10, 2005, affiant responded to a radio call to 10-19 (________) to Tier C of the N4 Housing Unit. Upon arrival, affiant found inmate Derrick Scott struggling with DWCC Correctional Officers, Lieutenant Malcolm and Sergeant Robert Davis. Affiant clearly saw inmate Scott attempting to strike, spit, kick and bite the officers. Other DWCC Correctional Officers, Sergeant Kidd, and Lieutenant Sanders responded to provide assistance. Lieutenant Malcolm and Sergeant Kidd held inmate Scott's head back and to the side in an attempt to prevent his spitting and biting them. Affiant and Lieutenant Sanders held inmate Scott's legs in an attempt to prevent him from kicking. Sergeant Davis had inmate Scott's arms in an attempt to prevent him from striking.
- Correctional Officer (Captain) John Toffton was also radioed to provide assistance. Upon his arrival, Captain Toffton gave inmate Scott several direct verbal orders to stop fighting. Inmate Scott refused to comply. As a result, inmate Scott was placed back in his cell and physically restrained until he stopped fighting. Scott's cell door was then closed.
- Inmate Scott later complied with the previous orders to stop fighting. However, DWCC Correctional Officer (Lieutenant Colonel) Danny Mills authorized placing inmate Scott in a restraint chair for security purposes to

protect staff. DWCC Medical Personnel was notified. Inmate Scott was later examined and treated by DWCC medical personnel, Nurse Grace Lee.

- Captain Toffton ordered that the video camera be set up. Inmate Scott was placed in the restraint chair. Captain Toffton took pictures of inmate Scott's injuries. Unusual Occurrence Reports (UOR) were also drafted in connection with the incident. A copy of affiant's UOR is attached hereto.

9. I have reviewed the claims in the lawsuit of inmate Derrick Scott. Inmate Scott claims that on July 10, 2005, I intentionally used excessive force against him. I, however, assert the following:

(a) On July 10, 2005, Necessary Force was used on inmate Derrick Scott in an attempt to restore discipline following his physical assault on DWCC Correctional Officers, and his refusal to comply with several direct verbal orders to stop fighting;

(b) On July 10, 2005, Necessary Force was used on inmate Derrick Scott, only after he physically assaulted DWCC Correctional Officers and refused to comply with several direct verbal orders to stop fighting;

(c) On July 10, 2005, affiant used only the amount of physical force necessary to restore discipline following inmate Scott's physical assault on DWCC Correctional Officers, and refusal to comply with several direct verbal orders to stop fighting;

(d) Inmate Scott's conduct on July 10, 2005 created a situation which could have resulted in serious physical injury if affiant, and other DWCC Correctional Officers, had not brought the inmate under control;

(e) The incident involving inmate Scott on July 10, 2005, could have been prevented if inmate Scott had not physically assaulted DWCC Correctional Officers;

(f) Any injuries sustained by inmate Scott during the incident that occurred on July 10, 2005 could have been prevented if inmate Scott had complied with direct verbal orders to stop fighting Correctional Officers;

(g) At no time on July 10, 2005 did affiant initiate the use of Necessary Force against the person of inmate Derrick Scott without just cause;

(h) At no time on July 10, 2005 did affiant intentionally or willfully use excessive force against the person of inmate Derrick Scott;

(i) At no time on July 10, 2005 did affiant intentionally or willfully deny inmate Derrick Scott medical treatment.

The above facts are true and correct to the best of my knowledge, information and belief.

**WITNESSES:**

______________________________
SIGNATURE

______________________________
**CHRIS EVANS**

______________________________
PRINT

______________________________
SIGNATURE

______________________________
PRINT

**SWORN TO AND SUBSCRIBED** before me this _____ day of March, 2007, ________________, Louisiana.

______________________________
**NOTARY PUBLIC**

Form: DWCC 56

DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS
DAVID WADE CORRECTIONAL CENTER

VENETIA MICHAEL, WARDEN

RICHARD STALDER, SECRETARY

# UNUSUAL OCCURRENCE REPORT

| Name | DERRICK SCOTT | Number | 126372 | Housing | N-4-C | Date of Incident | 10 July 05 | Time | 01:30 hrs. |
|---|---|---|---|---|---|---|---|---|---|
| Location of Incident | | N-4-C-Tier | | | | Witnesses | Lt. Malcolm, Lt. Sanders, Sgt. Davis,Sgt. Kidd, Capt. Toffton | | |
| Type of Incident | Assault on Staff Addendum | | | | | | | | |

DESCRIPTION OF THE INCIDENT (ATTACH ADDITIONAL INFORMATION IF NEEDED)

At approximately 01:30 hrs. on 10 July 2005, I Lt. Evans, responded to a radio call to 10-19 N-4. Once I arrived, I found Lt. Malcolm, Lt. Sanders, Sgt. Davis, and Sgt. Kidd on the tier floor, struggling to get inmate Derrick Scott #126372 under control. I grabbed inmate Scott by the legs and held them along with Lt. Sanders to prevent him from kicking. Lt. Malcolm had inmate Scott's head held back and to the side to help prevent him from spitting at us. Sgt. Kidd was assisting Lt. Malcolm with the positioning of inmate Scott's head. Sgt. Davis had inmate Scott by the arms and was helping hold inmate Scott down. Several orders were given to stop resisting but inmate Scott refused to comply. Capt. Toffton arrived and gave inmate Scott a direct verbal order to stop fighting the officers, but he continued to resist. Inmate Scott was lifted from the floor, placed back in his cell, and physically restrained until he stopped resisting. Inmate Scott then started following the orders given by security. Inmate Scott was seen by Nurse Lee and treated for injuries. The proper personnel were notified and it was ordered that inmate Scott be placed in the Violent Prisoner Restraint Chair. Polaroid pictures were taken, and inmate Scott was video taped being placed in the restraint chair.
All officers involved were seen by the nurse.

Chris Evans C/Lt.
[signature] C/Lt
**REPORTING OFFICER**

7/15/2005
**DATE COMPLETED**

4:21 AM
**TIME**

**REVIEWED BY**

XC: WARDEN (ORIGINAL)
DEPUTY WARDEN
CHIEF OF SECURITY
UNIT MAJOR
DEPARTMENT HEAD

2

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | | |
|---|---|---|
| **DERRICK SCOTT** | : | **CIVIL ACTION NO.: 05-2024-P** |
| **VERSUS** | : | **JUDGE: WALTER** |
| **ROBERT DAVIS, ET AL** | : | **MAGISTRATE JUDGE: HORNSBY** |

**AFFIDAVIT**

**PARISH OF CLAIBORNE**

**STATE OF LOUISIANA**

I, **CALE SANDERS**, the undersigned affiant, having first been duly sworn, did depose and state under oath the following:

1. That I am employed by the Louisiana Department of Public Safety and Corrections as a Correctional Officer (Lieutenant) at the David Wade Correctional Center at Homer, Louisiana (DWCC), and was so employed during July 2005. I have been employed as a Correctional Officer at DWCC for approximately ____ years.

2. At the request of the Attorney General's Office I have reviewed the claims asserted against me in the lawsuit of Derrick Scott, DOC #126372.

3. In his lawsuit, inmate Derrick Scott makes claims of cruel and unusual punishment asserted against him at DWCC on July 10, 2005.

4. As a Correctional Officer (Lieutenant) at DWCC during July 2005, I was familiar with DWCC's Use of Force Policy governed under the Department's Employee Policy Memorandum #02-01-005 during July 2005, a copy of which is attached. To affiant's knowledge, the purpose of this program is to provide guidance

Blumberg No. 5118 EXHIBIT 6

regarding the use of force. This includes physical force, chemical agents, firearms, electronic capture shield and other similar devices, intermediate/impact weapons, restraints, less than lethal munitions and other tactical equipment as authorized.

5. According to the Department's Employee Policy Memorandum #02-01-005, Force, Necessary Force, Reasonable Force, and Excessive Force are defined as followed:

(b) Force - Bodily contact of some nature—either with or without the use of restraint, electrical device, chemical agent, less than-lethal munition and device or firearm—which causes someone either to act in a manner contrary to his intent or to change his behavior to the desired action;

(c) Necessary Force – Force needed to gain control of an individual;

(d) Reasonable Force – Force justified by the specific elements of a situation, such as the amount of force responded to, a person's perception of danger, the existence of non-forceful alternatives, and any other relevant factors;

(e) Excessive Force – Force used in a situation justifying force that exceeds the force necessary to control the situation or continues after the person is subdued or restrained.

(See Attachment 1, pp. 1-2, sec. 2(B)(C)(D) and (E).

6. In accordance with Employee Policy Memorandum #02-01-005, physical force may be used to defend one's self or others against any physical assault. (See Attachment 1, p. 5, sec. D(2)(b).

7. Derrick Scott, DOC #126372, was an inmate housed in extended lockdown at DWCC during July 2005.

8. On July 10, 2005, the use Necessary Force on inmate Derrick Scott was required in connection with the following incident:

- On July 10, 2005, affiant responded to a radio call to 10-19 (________) to Tier C of the N4 Housing Unit. Upon arrival, affiant found inmate Derrick Scott struggling with DWCC Correctional Officers, Lieutenant Roderick Malcolm, Sergeant Robert Davis and Sergeant Kevin Kidd. Affiant clearly saw inmate Scott attempting to strike, spit, kick and bite the officers. Affiant then grabbed inmate Scott's legs in an attempt to prevent him from kicking. At this time, Correctional Officers (Lieutenant) Chris Evans and (Captain) John Toffton arrived. Lieutenant Evans assisted affiant in restraining inmate Scott's legs. Lieutenant Malcolm and Sergeant Kidd held inmate Scott's head back and to the side in an attempt to prevent his spitting and biting them. Sergeant Davis had inmate Scott's arms in an attempt to prevent him from striking.
- Upon his arrival, Captain Toffton gave inmate Scott several direct verbal orders to stop fighting. Inmate Scott refused to comply. As a result, inmate Scott was placed back in his cell and physically restrained until he stopped fighting. Scott's cell door was then closed.
- Inmate Scott later complied with the previous orders to stop fighting. However, DWCC Correctional Officer (Lieutenant Colonel) Danny Mills authorized placing inmate Scott in a restraint chair for security purposes to

protect staff. DWCC Medical Personnel was notified. Inmate Scott was later examined and treated by DWCC medical personnel, Nurse Grace Lee.

- Captain Toffton ordered that the video camera be set up. Inmate Scott was placed in the restraint chair. Captain Toffton took pictures of inmate Scott's injuries. Unusual Occurrence Reports (UOR) were also drafted in connection with the incident. A copy of affiant's UOR is attached hereto.

9. I have reviewed the claims in the lawsuit of inmate Derrick Scott. Inmate Scott claims that on July 10, 2005, I intentionally used excessive force against him. I, however, assert the following:

(a) On July 10, 2005, Necessary Force was used on inmate Derrick Scott in an attempt to restore discipline following his physical assault on DWCC Correctional Officers, and his refusal to comply with several direct verbal orders to stop fighting;

(b) On July 10, 2005, Necessary Force was used on inmate Derrick Scott, only after he physically assaulted DWCC Correctional Officers and refused to comply with several direct verbal orders to stop fighting;

(c) On July 10, 2005, affiant used only the amount of physical force necessary to restore discipline following inmate Scott's physical assault on DWCC Correctional Officers, and refusal to comply with several direct verbal orders to stop fighting;

(d) Inmate Scott's conduct on July 10, 2005 created a situation which could have resulted in serious physical injury if affiant, and other DWCC Correctional Officers, had not brought the inmate under control;

(e) The incident involving inmate Scott on July 10, 2005, could have been prevented if inmate Scott had not physically assaulted DWCC Correctional Officers;

(f) Any injuries sustained by inmate Scott during the incident that occurred on July 10, 2005 could have been prevented if inmate Scott had complied with direct verbal orders to stop fighting Correctional Officers;

(g) At no time on July 10, 2005 did affiant initiate the use of Necessary Force against the person of inmate Derrick Scott without just cause;

(h) At no time on July 10, 2005 did affiant intentionally or willfully use excessive force against the person of inmate Derrick Scott;

(i) At no time on July 10, 2005 did affiant intentionally or willfully deny inmate Derrick Scott medical treatment.

The above facts are true and correct to the best of my knowledge, information and belief.

**WITNESSES:**

______________________________
SIGNATURE

______________________________
**CALE SANDERS**

______________________________
PRINT

______________________________
SIGNATURE

______________________________
PRINT

**SWORN TO AND SUBSCRIBED** before me this _____ day of March, 2007, _______________, Louisiana.

______________________________
**NOTARY PUBLIC**

Form: DWCC 56

DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS

**DAVID WADE CORRECTIONAL CENTER**

VENETIA MICHAEL, WARDEN

RICHARD STALDER, SECRETARY

# UNUSUAL OCCURRENCE REPORT

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Name | DERRICK SCOTT | Number | 126372 | Housing | N4C | Date of Incident | 10 July 2005 | Time | Approx 01:30 housr |
| Location of Incident | | N4C | | | | Witnesses | Listed on previous report | | |
| Type of Incident | Assault on Staff Addendum | | | | | | | | |

DESCRIPTION OF THE INCIDENT (ATTACH ADDITIONAL INFORMATION IF NEEDED)

Information not included in previous report:

On the above date and approximate time, when I C/Lt Sanders arrived on N4C tier, I saw inamte Derrick Scott #126372 on the tier floor struggling with C/Lt. Malcolm, and C/Sgt. Kidd, and C/Sgt. Davis. I saw that inamte Scott was attempting to kick C/Lt. Malcolm. I grabbed inmate Scott's legs and wrapped both arms around them to prevent him from kicking. Inmate Scott continued to try to free his legs from my arms. At this time C/Lt. Evans and C/Capt. Toffton arrived. Lt. Evans then assisted me with holding inmate Scott's legs. We then moved inmate Scott back into his cell and held him until he stopped resisting. We then exited the cell and the door was closed. He then complied with all orders given to him.

C/Lt. Cale Sanders

[signature]

**REPORTING OFFICER**

7/15/2005

**DATE COMPLETED**

3:18 AM

**TIME**

[signature]

**REVIEWED BY**

XC: WARDEN (ORIGINAL)
DEPUTY WARDEN
CHIEF OF SECURITY
UNIT MAJOR
DEPARTMENT HEAD

2

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | | |
|---|---|---|
| **DERRICK SCOTT** | : | **CIVIL ACTION NO.: 05-2024-P** |
| **VERSUS** | : | **JUDGE: WALTER** |
| **ROBERT DAVIS, ET AL** | : | **MAGISTRATE JUDGE: HORNSBY** |

**AFFIDAVIT**

**PARISH OF CLAIBORNE**

**STATE OF LOUISIANA**

I, **JOHN TOFFTON**, the undersigned affiant, having first been duly sworn, did depose and state under oath the following:

1. That I am employed by the Louisiana Department of Public Safety and Corrections as a Correctional Officer (Captain) at the David Wade Correctional Center at Homer, Louisiana (DWCC), and was so employed during July 2005.

2. At the request of the Attorney General's Office I have reviewed the claims asserted in the lawsuit of Derrick Scott, DOC #126372.

3. In his lawsuit, inmate Derrick Scott makes claims of cruel and unusual punishment asserted against him at DWCC on July 10, 2005.

4. As a Correctional Officer (Captain) at DWCC during July 2005, I was familiar with DWCC's Use of Force Policy governed under the Department's Employee Policy Memorandum #02-01-005 during July 2005, a copy of which is attached. To affiant's knowledge, the purpose of this program was to provide guidance regarding the use of force. This included physical force, chemical agents, firearms, electronic capture shield and other similar devices, intermediate/impact

EXHIBIT 7

Blumberg No. 5118

weapons, restraints, less than lethal munitions and other tactical equipment as authorized.

5. According to the Department's Employee Policy Memorandum #02-01-005, Force, Necessary Force, Reasonable Force, and Excessive Force are defined as followed:

(b) Force - Bodily contact of some nature—either with or without the use of restraint, electrical device, chemical agent, less-than-lethal munitions and device or firearm—which causes someone either to act in a manner contrary to his intent or to change his behavior to the desired action;

(c) Necessary Force – Force needed to gain control of an individual;

(d) Reasonable Force – Force justified by the specific elements of a situation, such as the amount of force responded to, a person's perception of danger, the existence of non-forceful alternatives, and any other relevant factors;

(e) Excessive Force – Force used in a situation justifying force that exceeds the force necessary to control the situation or continues after the person is subdued or restrained.

(See Attachment 1, pp. 1-2, sec. 2(B)(C)(D) and (E).

6. In accordance with Employee Policy Memorandum #02-01-005, physical force may be used to defend one's self or others against any physical assault. (See Attachment 1, p. 5, sec. D(2)(b).

7. Derrick Scott, DOC #126372, was an inmate housed in extended lockdown at DWCC during July 2005.

8. On July 10, 2005, the use Necessary Force on inmate Derrick Scott was required in connection with the following incident:

- On the morning of July 10, 2005, affiant was notified by DWCC Correctional Officers (Lieutenant) Roderick Malcolm to 10-19 (________) to Tier C of the N4 Housing Unit. Upon arrival, affiant found inmate Derrick Scott struggling with DWCC Correctional Officers, Lieutenant Malcolm, Sergeant Kidd, Lieutenant Sanders, Lieutenant Evans and Sergeant Robert Davis. Affiant then retrieved a can of Deep Freeze (mace) from the key room and entered the tier. Affiant clearly saw inmate Scott attempting to strike, spit, kick and bite the officers. Correctional Officers Kidd and Malcolm were holding inmate Scott's head back and to the side in an attempt to prevent his spitting and biting them. Correctional Officers Sanders and Evans had inmate Scott's legs restrained in an attempt to prevent him from kicking. Sergeant Davis had inmate Scott's arms in an attempt to prevent him from striking.
- Affiant gave inmate Scott several direct verbal orders to stop fighting the officers. Inmate Scott refused to comply. However, due to the close proximity of the officers and the risk of incapacitating them, affiant could not use the chemical agent (mace) at that time. As a result, inmate Scott had to be physically placed back in his cell and physically restrained until he stopped fighting the officers. Scott's cell door was then closed.
- Inmate Scott later complied with the previous orders to stop fighting. However, affiant notified DWCC Correctional Officer (Lieutenant

Colonel) Danny Mills, the duty officer, and obtained his concurrence to place inmate Scott in the Violent Prisoner Restraint Chair for security purposes to protect staff. DWCC Medical Personnel was notified. DWCC Nurse Grace Lee contacted Dr. Gereighty, who concurred with the use of the restraint chair. Affiant took still photographs of inmate Scott and his visible injuries. Affiant also ordered that the video camera be set up, and that inmate Scott be placed in the restraint chair. Inmate Scott was examined and treated by Nurse Grace Lee. Nurse Lee contacted DWCC Mental Health Specialist, Michelle Dauzat, as inmate Scott was on standard suicide watch at the time. Nurse Lee also examined each correctional officer involved in the use of force with inmate Scott.

- Affiant later questioned Lieutenant Malcolm concerning the incident involving inmate Scott. Affiant's inquiry revealed that when Lieutenant Malcolm and Sergeant Davis restrained inmate Scott and removed him from his cell for shower, inmate Scott deliberately pushed Sergeant Davis. Officers Malcolm and Davis then took inmate Scott to the floor in an attempt to gain physical control of the inmate and restore order. Other Correctional Officers responded to assist officers Malcolm and Davis. Officer Malcolm then radioed affiant for assistance.
- Affiant notified DWCC Assistant Warden, Angie Huff, and Correctional Officer (Lieutenant Colonel) Ray Hanson of the incident.

9. I have reviewed the claims in the lawsuit of inmate Derrick Scott. Inmate Scott claims that on July 10, 2005, I intentionally watched DWCC Correctional Officers

use excessive force against him and did nothing to prevent the occurrence. I, however, assert the following:

(a) On July 10, 2005, Necessary Force was used on inmate Derrick Scott in an attempt to restore discipline following his physical assault on Affiant and other DWCC Correctional Officers, and his refusal to comply with several direct verbal orders to stop fighting;

(b) On July 10, 2005, Necessary Force was used on inmate Derrick Scott, only after he physically assaulted DWCC Correctional Officers and refused to comply with several direct verbal orders to stop fighting;

(c) On July 10, 2005, only the amount of physical force necessary to restore discipline was used on inmate Scott following his physical assault on DWCC Correctional Officers, and refusal to comply with several direct verbal orders to stop fighting;

(d) Inmate Scott's conduct on July 10, 2005 created a situation which could have resulted in serious physical injury if affiant, and other DWCC Correctional Officers, had not brought the inmate under control;

(e) The incident involving inmate Scott on July 10, 2005, could have been prevented if inmate Scott had not physically assaulted DWCC Correctional Officers;

(f) Any injuries sustained by inmate Scott during the incident that occurred on July 10, 2005 could have been prevented if inmate Scott had complied with direct verbal orders to stop fighting Correctional Officers;

(e) At no time on July 10, 2005 did DWCC Correctional Officers use excessive force against the person of inmate Derrick Scott;

(f) At no time on July 10, 2005 did affiant watch DWCC Correctional Officers use excessive force against inmate Scott and intentionally do nothing to prevent the occurrence;

(g) At no time on July 10, 2005 did affiant intentionally or willfully deny inmate Derrick Scott medical treatment;

The above facts are true and correct to the best of my knowledge, information and belief.

**WITNESSES:**

______________________________ ____________________________
SIGNATURE **JOHN TOFFTON**

______________________________
PRINT

______________________________
SIGNATURE

______________________________
PRINT

**SWORN TO AND SUBSCRIBED** before me this _____ day of March, 2007, Homer, Louisiana.

________________________________
**NOTARY PUBLIC**

Form: DWCC 56,

DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS
**DAVID WADE CORRECTIONAL CENTER**

VENETIA MICHAEL, WARDEN

RICHARD STALDER, SECRETARY

# UNUSUAL OCCURRENCE REPORT

| Name | DERRICK SCOTT | Number | 126372 | Housing | N4C | Date of Incident | 10 July 2005 | Time | Approx. 01:30 hours |
|---|---|---|---|---|---|---|---|---|---|
| Location of Incident | | N4C | | | | Witnesses | Listed below on first line | | |
| Type of Incident | Assault on Staff Addendum | | | | | | | | |

DESCRIPTION OF THE INCIDENT (ATTACH ADDITIONAL INFORMATION IF NEEDED)

Witnesses: C/Capt. John Toffton, C/Lt. Roderick Malcolm, C/Lt. Chris Evans, C/Lt. Cale Sanders, C/Sgt. Robert Davis, C/Sgt. Kevin Kidd, Nurse Grace Lee.

On 10 July 2005 at approximately 01:30 hours, I was notified by C/Lt. Malcolm to 10-19 N4. On arriving I found inmate Derrick Scott #126372 struggling with C/Lt. Malcolm, C/Lt. Evans, C/Lt. Sanders, C/Sgt. Davis, C/Sgt. Kidd. I retrieved a can of Deep Freeze from the key room and responded to the tier. I clearly saw inmate Scott attempting to strike the officers, spit, kick and bite at the officers. C/Sgt. Kidd and C/Lt. Malcom was holding inmate Scotts head back and to the side to prevent his spitting and biting them. C/Lt. Sanders and C/Lt. Evans had inmate Scott's legs restrained to prevent him from kicking. C/Sgt. Davis had inmate Scott's arms to prevent him from striking. I gave inmate Scott a direct verbal order to stop fighting the officers. He refused to comply. Due to the close proximity of the officers and the risk of incompacitating them, I could not use chemical agent at that time. Inmate Scott was physically placed back in his cell physically restrained until he stopped resisting. The cell door was closed. Inmate Scott then followed all orders given. I notified C/Lt. Col. Danny Mills, the duty officer, at 01:34 hours and gain his concurrance with the use of the Violent Prisoner Restraint Chair for security purposes to protect staff. Nurse Lee contacted Dr. Gereighty, who at 02:20 hours concurred with the use of the restraint chair. Nurse Lee examined inmate Scott. I took several still photographs of inmate Scott of his visible injuries. The video camera was setup and inmate Scott was placed in the restraint chair at 02:30 hours. Nurse Lee then treated inmate Scott and checked his restrains. Nurse Lee contacted Mental Health, Ms. Dauzat, as inmate Scott is currently on standard suicide watch.

Nurse Lee then examined each officer involved in the use of force with inmate Scott.

On questioning C/Lt. Malcolm concerning the incident, he stated that C/Sgt. Davis and himself had restrained inmate Scott and removed him from his cell for shower as required by inmate posted policy #53. Inmate Scott then deliberately pushed C/Sgt. Davis. C/Lt. Malcolm and C/Sgt. Davis then took inmate Scott to the floor in order to control him. C/Sgt. Kidd assisted. C/Lt. Malcolm then radioed me for assistance, C/Lt. Sanders was present in the cell block and responded to assist. C/Lt. Evans responded to N4 to assist. C/Lt. Malcolm stated to me that inmate Scott attempted to strike with his restrained hands, and spit and bit at, and kick the officers as they physically restrained him.

Warden Huff and C/Lt. Col.. Hanson was also notified. C/Lt. Col. Hanson authorized the use of the food loaf program.

John Toffton C/Capt.

**REPORTING OFFICER**

7/15/2005
**DATE COMPLETED**

XC: WARDEN (ORIGINAL)
DEPUTY WARDEN
CHIEF OF SECURITY
UNIT MAJOR
DEPARTMENT HEAD

3:33 AM
**TIME**

**REVIEWED BY**

2